## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| FRONT ROW TECHNOLOGIES, LLC, | ) ) | Civil Action No 1:12-CV-01309 WJ/ACT |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| MLB ADVANCED MEDIA, L.P., MERCURY RADIO ARTS, INC., d/b/a 'THE GLENN BECK PROGRAM, INC.', GBTV, LLC, & PREMIERE RADIO NETWORKS, INC. | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO CONSOLIDATE AND/OR STAY**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. Background ................................................................................................................ 2

    A. Front Row And The Front Row Patents ............................................................. 2

    B. The Original New Mexico Lawsuit And Front Row's Request For A Stay ....................... 4

    C. Front Row's Failed Attempt To Secure Venue In Texas ....................................... 6

    D. The Transfer to New Mexico ............................................................................. 7

III. Legal Standard ......................................................................................................... 7

IV. Argument ................................................................................................................. 8

    A. Consolidation Is Appropriate Because Separate Lawsuits Regarding The Same Patent Family In This Court Would Result In Wasteful, Duplicative Litigation ................................. 8

    B. A Stay Is Appropriate Until The Pending Reexaminations Are Complete ...................... 11

    C. Defendants Should Be Awarded Fees Related To This Motion ....................................... 13

## **TABLE OF AUTHORITIES**

**Cases**

*Gen. Tire & Rubber Co. v. Watkins*,
  373 F.2d 361, 362 (4th Cir. 1967) ........................................................................................ 11

*Gould v. Control Laser Corp.*,
  705 F.2d 1340, 1342 (Fed. Cir. 1983) ................................................................................... 12

*In re Laughlin Prods., Inc.*,
  265 F. Supp. 2d 525, 530 (E.D. Pa. 2003) .............................................................................. 8

*Landis v. N. Am. Co.*,
  299 U.S. 248, 254 (1936) ........................................................................................................ 8

*Servants of Paraclete, Inc. v. Great American Ins. Co.*,
  866 F. Supp. 1560, 1572 (D. NM. 1994) ................................................................................ 7

*Soverain Software LLC v. Amazon, Inc.*,
  356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) ............................................................................ 8

*Tric Tools, Inc. v. TT Techs., Inc.*,
  No. 12-CV-3490 YGR, 2012 WL 5289409 (N.D. Cal. Oct. 25 2012) .................................... 8

I.      **Introduction**

Defendants move to consolidate this patent infringement lawsuit with another lawsuit already pending before this Court alleging infringement of substantially similar patents, all from the same patent family as the patent-in-suit here. In fact, this case was transferred from the United States District Court for the Northern District of Texas precisely so that it could be consolidated with that case. Defendants moved to transfer this case to the District of New Mexico "where it can be consolidated with case number 1:10-cv-0433," a case originally filed by Plaintiff Front Row against Defendant MLB Advanced Media before Judge Browning. (Dkt. 23.) The Texas court granted Defendants' motion, holding that "[s]plitting the case into two venues and unnecessarily injecting a large degree of uncertainty into the proceedings will make the resolution of the parties' dispute more difficult, less efficient, more expensive, and may compromise the administration of justice." (Declaration of Alan Littmann ("Littmann Decl."), Ex. 1, pp. 8-9.)

Despite the Texas court's clear ruling, Front Row has refused to consent to consolidation and has indicated it will oppose this motion. The patent-in-suit stems from the same original application, has an almost identical specification, uses the same figures, covers the same technology, and uses many of the same terms as the patents pending before Judge Browning. The two cases therefore involve overlapping facts and law pertaining to the validity of the patent, claim construction, and infringement. As the Texas court ruled, having one patent tried separately from the other four patents "imposes unnecessary expense on the parties and wastes the judicial resources of both courts, while also exposing all concerned to an unnecessary risk of inconsistent claim interpretations and overall case outcomes." (Id., p. 9.) Front Row's opposition to consolidation is baseless.

Separately, Defendants seek a stay pending the outcome of patent reexaminations involving the Front Row patents before the United States Patent and Trademark Office

1

("USPTO"). Currently all five of Front Row's asserted patents are undergoing reexamination and, with respect to the patent-in-suit, the USPTO so far has rejected all nineteen claims. The stay would not have any adverse effect on Front Row and, in fact, Front Row has jointly requested, and received, a stay in the original case. In March 2011, the parties submitted a joint motion to stay that litigation pending the outcome of the reexaminations. At that time, Front Row argued that a stay would result in "simplifications and judicial efficiency." Since then, Front Row has acknowledged several additional times that the legal proceedings should await the outcome of the reexaminations. Yet Front Row is now refusing to consent to a stay in this case, preferring instead to waste the Defendants', and this Court's, resources.

In light of the holding by the Texas court, and the overwhelming evidence supporting that holding, this case should be consolidated with case number 10-cv-00433 before Judge Browning and stayed pending the outcome of the USPTO's reexamination of the Front Row patents. Instead of abiding by the Texas court's ruling, Front Row is engaging in blatant forum and judge shopping and is simply attempting to increase costs and waste judicial resources. Front Row has no legitimate basis for objecting to these requests and should be required to pay Defendants' fees related to this motion.

## II.   Background

### A.   Front Row And The Front Row Patents

Front Row filed this patent infringement action alleging infringement of U.S. Patent No. 8,090,321 ("the '321 Patent"). Front Row is a New Mexico limited liability company that is located in Albuquerque, New Mexico. (Dkt. 1, ¶ 1.) According to the patent-in-suit, Front Row's owners, who are also listed as the inventors of Front Row's patents, live and work in Albuquerque. (Dkt. 25, Ex. 1.)

Front Row has obtained several patents, all of which stem from a single patent application that was filed on November 8, 2000. That application, U.S. Patent App. 09/708,776 ("the '776 Application"), relates to certain wireless transmission of video data to handheld devices. In 2006, the '776 Application was granted as U.S. Patent No. 7,149,549 ("the '549 Patent"). (*Id.*, Ex.2.) Additional Front Row patents have since been granted based upon the '776 Application, including U.S. Patent Nos. 7,376,388 ("the '388 Patent") (*id.*, Ex. 3), 7,620,426 ("the '426 Patent"), and 7,826,877 ("the '877 Patent") (Dkt. 26, Exs. 4-5), and the '321 Patent. (Dkt. 25, Ex. 1.) All of the Front Row patents at issue claim to be continuations of the '776 Application and share a nearly identical specification with the original '549 Patent.

The '321 Patent, which is the patent asserted in the present case, was granted in January 2012 but describes itself in relation to Front Row's other patents as follows:

> Continuation of application No. 12/329,631, filed on Dec. 7, 2008, now Pat. No. 7,826,877, which is a continuation of application No. 11/738,088, filed on Apr. 20, 2007, now Pat. No. 7,620,426, which is a continuation of application No. 11/498,415, filed on Aug. 2, 2006, now Pat. No. 7,376,388, and a continuation of application No. 09/708,776, filed on Nov. 8, 2000, now Pat. No. 7,149,549.

(*Id.* at "Related U.S. Application Data".) The relationship among the patents is illustrated in the diagram below. As shown, the first four patents relating to the original '776 Application were originally asserted against defendant MLBAM in this Court in May 2010 and those claims are still pending against defendant NBA Media Ventures ("NBAMV"). The final patent, the '321 Patent, was the subject of the lawsuit originally asserted in Texas and now has been transferred to this Court.



All five patents were issued from the same original application and contain identical or very similar specifications, figures, and claim terms. One of the four patents in the other pending New Mexico lawsuit even has an identical title to the patent-at-issue here.

**B.  The Original New Mexico Lawsuit And Front Row's Request For A Stay**

On May 5, 2010, Front Row filed a lawsuit in this Court, case number 10-cv-00433, alleging patent infringement against MLBAM and Major League Baseball Properties, Inc. ("MLBP"). (Case No. 10-cv-0433 pending in the District of New Mexico, ("Original New Mexico Lawsuit"), Dkt. 1.) In that case, Front Row, which later also added defendant NBA Media Ventures ("NBAMV"), alleged infringement of the '549, '388, '426, and '877 patents – the first four patents shown in the above diagram. (Original New Mexico Lawsuit, Dkt. 54-1.)

In March 2011, after MLBAM filed *inter partes* reexamination requests regarding all four of the asserted Front Row patents, the parties' submitted a joint motion to stay the litigation pending the reexamination of the patents-in-suit. As stated in the joint motion,

> The Parties believe that staying the litigation will preserve both Parties' resources as well as the Court's. In light of the simplifications and judicial efficiency that would result from a stay in this case, the Parties respectfully request that this Court stay the current litigation pending the outcome of the Reexamination Requests (excluding any appeals of the Reexamination Requests) of the patents-in-suit without prejudice.

4

(Original New Mexico Lawsuit, Dkt. 82, p. 2.) Judge Browning granted the parties' motion and the Original New Mexico Lawsuit remains stayed.

On November 8, 2012, Front Row filed a Notice of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1) in New Mexico, thereby dismissing all claims against two of the three defendants: MLBAM and MLBP. (Original New Mexico Lawsuit, Dkt. 99.)   Front Row did not at that time move to dismiss NBAMV, and the Original New Mexico lawsuit remains pending. Immediately following Front Row's dismissal of MLBAM and MLBP, counsel for Front Row sent counsel for MLBAM a letter explaining that it had dismissed the Original New Mexico Lawsuit and will not sue MLBAM for infringement regarding the previously asserted patents "before the re-examinations of these patents have concluded." (Littmann Decl. Ex. 2.)   Front Row further explained that, once the re-examinations were complete, it "will make a decision based on (1) what claims survived; (2) how the surviving claims read; and (3) what products, if any, are covered by the surviving claims." (*Id*.)

Prior to the stay and dismissal of defendants MLBAM and MLBP, the parties participated in certain discovery and filed several pleadings, including the following:

- Front Row filed three amended complaints and MLBAM filed a motion to dismiss the complaints;

- Front Row served preliminary infringement contentions;

- The parties filed a Provisional Discovery Plan on January 25, 2011 describing certain scheduling agreements and disputes, the form and nature of document production, initial fact witness lists, agreements regarding the number of interrogatories and requests for admission permitted by each party, and the number of hours of depositions permitted for fact witnesses; and

- Per the court's March 12, 2011 order, the parties have filed four joint status reports regarding the *inter partes* reexaminations. Each report describes the latest actions taken by the parties and the USPTO with respect to the Front Row patents.

5

On December 7, 2012, the USPTO granted MLBAM's request for a reexamination rejecting all nineteen claims in the '321 patent. (Dkt. 43, Ex. A.) The USPTO further stated that, based on the information contained in MLBAM's request, there was a rebuttable presumption that the '321 Patent was not entitled to its claimed priority date of 10/26/2000, but rather would have a priority date of 12/7/2008. (*Id.*) Thus far, in the various reexaminations of Front Row's patents, the USPTO has rejected 130 of the 142 Front Row patent claims at issue. (Original New Mexico Lawsuit, Dkt. 98.)

On January 2, 2013, Front Row filed a motion to dismiss the Original New Mexico Lawsuit against NBAMV, arguing that since a reexamination is pending, a dismissal of the claims without prejudice "will reduce both parties [sic] expenses and will better preserve judicial resources." (Original New Mexico Lawsuit, Dkt. 103.) Since briefing has not concluded regarding Front Row's motion, the Original New Mexico Lawsuit remains pending against NBAMV and is stayed pending the outcome of the reexaminations. It is Defendants' understanding that NBAMV will oppose Front Row's motion to dismiss.

**C.  Front Row's Failed Attempt To Secure Venue In Texas**

On May 25, 2012, despite already having filed the Original New Mexico Lawsuit and residing in New Mexico, Front Row filed this lawsuit in the Northern District of Texas. Shortly thereafter, Defendants moved to transfer to this Court under 28 U.S.C. § 1404(a) so that it could be consolidated with the Original New Mexico Case. Defendants' motion specifically requested a transfer to New Mexico "where it can be combined with case number 1:10-cv-00433." (Dkt. 23.) Judge Kinkeade granted that motion, holding that "[i]n the court's view, retaining venue of this litigation (which involves one of five patents) while the other four patents continue to be litigated in the proposed transferee district imposes unnecessary expense on the parties and wastes the judicial resources of both courts, while also exposing all concerned to an unnecessary risk of

6

inconsistent claim interpretations and overall case outcomes." (Littmann Decl. Ex. 1, pp. 8-9.) The Court further held that "[s]plitting the case into two venues and unnecessarily injecting a large degree of uncertainty into the proceedings will make the resolution of the parties' dispute more difficult, less efficient, more expensive, and may compromise the administration of justice." (*Id.*, p. 9.)

### D.  The Transfer to New Mexico

On December 19, 2012, this lawsuit was transferred to New Mexico. Following transfer, and given the Texas court's clear direction, counsel for MLBAM asked counsel for Front Row if it consented to a request to consolidate the litigation before Judge Browning in the Original New Mexico Lawsuit and to continue under the stay requested jointly by the parties. Front Row's counsel refused to consent to either request, instead indicating that they intended to file a petition for a writ of mandamus. (Littmann Decl. Ex. 3.)[1]  The parties also held a meet and confer regarding this motion and Front Row's counsel reiterated its refusal to consent to any type of consolidation or stay. (Littmann Decl. Par. 5.)

## III.  Legal Standard

A court may consolidate two actions if they involve "a common question of law or fact." Fed. R. Civ. P. 42(a). A decision whether to consolidate is left to the sound discretion of the district court. *Servants of Paraclete, Inc. v. Great American Ins. Co.*, 866 F. Supp. 1560, 1572 (D.N.M. 1994). "If the cases involve a common question of law or fact, the Court should then weigh the interests of judicial convenience in consolidating the cases against the delay, confusion, and prejudice consolidation might cause." *Id.*

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

---

[1]  To date, the petition for writ of mandamus has not been filed by Front Row.

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to stay litigation pending reexamination, Courts typically consider (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay will unduly prejudice or present a clear tactical advantage to the nonmoving party, and (4) whether a stay will reduce the burden of litigation on the parties and the court. *See, e.g.*, *Soverain Software LLC v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005); *Tric Tools, Inc. v. TT Techs., Inc.*, No. 12-CV-3490 YGR, 2012 WL 5289409 (N.D. Cal. Oct. 25 2012); *In re Laughlin Prods., Inc.*, 265 F. Supp. 2d 525, 530 (E.D. Pa. 2003).

IV. Argument

   A. Consolidation Is Appropriate Because Separate Lawsuits Regarding The Same Patent Family In This Court Would Result In Wasteful, Duplicative Litigation

The United States District Court for the Northern District of Texas held that "retaining venue of this litigation (which involves one of five patents) while the other four patents continue to be litigated in the proposed transferee district imposes unnecessary expense on the parties and wastes the judicial resources of both courts, while also exposing all concerned to an unnecessary risk of inconsistent claim interpretations and overall case outcomes." (Littmann Decl. Ex. 1, pp. 8-9.) The exact same reasoning continues to apply now that Plaintiff Front Row inexplicably seeks to have two separate cases pending in the District of New Mexico regarding patents that were issued from the same application and contain identical or very similar specifications, figures, and claim terms. The situation is even more egregious now than it was when the Texas court issued its ruling since Front Row is blatantly engaged in forum and judge shopping: It filed one suit, asked for a stay, filed a subsequent suit in a different jurisdiction, dismissed certain defendants from the first suit, told Defendants it would oppose consolidation, and then moved to dismiss the remaining

defendant from the first case without notifying that court of any of these developments. In so doing, Front Row is also directly contravening the clear holding from the Texas case.

Front Row's most recent attempt at judge shopping – its attempt to dismiss NBAMV from the Original New Mexico Lawsuit without prejudice – is particularly outrageous. The result of Front Row's actions would be that a case in which the parties have negotiated and filed a discovery plan, served three complaints, briefed motions to dismiss, filed status reports, and served preliminary infringement contentions would be dismissed only to have essentially the same case re-filed so that the parties could go through the same exercise in front of a different judge. This is an abuse of process and a waste of the Court's resources.

Furthermore, since the Original New Mexico Lawsuit remains pending, there can be no justification for not consolidating this case with the one currently before Judge Browning. While Front Row justified its opposition to transfer on the basis that Texas was supposedly a more convenient venue, no such pretext is available in this context. Instead, Front Row's refusal to concede to consolidation is an attempt to create inefficiency and is directly contrary to the spirit, if not the holding, of Judge Kinkeade's opinion: "Splitting the case into two venues and unnecessarily injecting a large degree of uncertainty into the proceedings will make the resolution of the parties' dispute more difficult, less efficient, more expensive, and may compromise the administration of justice." (*Id.,* p. 9.) While the case would not be split into "two venues" here, there is no substantive difference since Front Row seeks an entirely separate lawsuit in front of a separate judge and presumably along separate discovery and trial tracks. This makes no sense at all and is only conceivably being advanced by Front Row as a means for increasing the costs to defendants at the expense of judicial efficiency.

The patents asserted in the Original New Mexico Lawsuit were based on the same application, have a nearly identical specification, use the same figures, cover the same technology, and use the same terms in their claims as the patent-in-suit here. The '321 Patent is a continuation of the patents at issue in the Original New Mexico Lawsuit, claims priority based on the applications at issue there, and even has the same title as one of the patents at issue in the Original New Mexico lawsuit, the '877 Patent.

To illustrate just how similar these patents are—and how wasteful additional litigation would prove—compare the first claims in the '321 Patent (at issue here) and the '877 Patent (asserted in the Original New Mexico Lawsuit).

| **Patent 8,090,321** | **Patent No. 7,826,877** |
|---|---|
| "Transmitting Sports and Entertainment Data to Wireless Hand Held Devices Over a Telecommunications Network." | "Transmitting Sports and Entertainment Data to Wireless Hand Held Devices Over a Telecommunications Network." |
| 1. A method for wirelessly providing venue-based data to at least one remote hand held device, said method comprising: | 1. A method for wirelessly providing venue-based data to at least one hand held device, said method comprising: |
| acquiring venue-based data that comprises video captured from more than one camera located at at least one entertainment venue and from said at least one entertainment venue into at least one server; | acquiring venue-based data including video captured simultaneously from more than one camera located at least one entertainment venue and performer information from said at least one entertainment venue into at least one server; |
| authenticating at least one remote hand held device to provide at least one user of said at least one remote hand held device access to said venue-based data via said at least one remote hand held device; and | authenticating remote hand held device user access to said venue-based data; and |
| wirelessly streaming said venue-based data from said at least one server to said at least one remote hand held device authorized to receive said venue-based data through at least one wireless data communications network, in response to said authenticating said at least one remote hand held device to access to said venue-based data, in order to permit said venue-based data to be accessible via said at least one remote hand held device by said at least one user of said at least one remote hand held device at locations within and remote from said at least one venue for viewing via said at least one remote hand held device, said video captured from said more than one camera located at said at least one entertainment venue. | wirelessly transmitting said venue-based data from said at least one server to at least one hand held device authorized to receive said venue-based data through a wireless telecommunications network, in response to said authenticating remote hand held device user access to said venue-based data, in order to permit said venue-based data to be accessible via said at least one hand held device at locations within and remote from said at least one venue. |

(Dkt. 25, Ex.1; Dkt. 26, Ex.5.) Not only do the claims share numerous terms that likely will require construction (*e.g.*, "venue-based data," "hand held device," "authenticating," and "entertainment venue"), but the variations between the patent language will also be relevant (*e.g.*, "wirelessly

10

streaming" vs. "wirelessly transmitting"). If the patents were to be administrated separately, there could be inconsistent rulings that would impact the validity, claim construction, and infringement allegations. Consolidation would therefore prevent "an extravagantly wasteful and useless duplication of time and effort of the federal courts by the simultaneous trial or two complex and elaborate cases involving substantially the same factual issues." *Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 362 (4th Cir. 1967).

### B.  A Stay Is Appropriate Until The Pending Reexaminations Are Complete

Separately, a stay of this lawsuit pending the outcome of all the reexaminations of Front Row's patents is appropriate. The Original New Mexico Lawsuit already is stayed pending the outcome of the reexaminations. That stay was jointly requested by Front Row and the defendants. In a filing with the Court, Front Row submitted that such a stay would result in "simplifications and judicial efficiency" and that "staying the litigation will preserve both Parties' resources as well as the Court's." (Original New Mexico Dkt. 82.)

Defendants agree with Front Row's original position that a stay is appropriate since it would be wasteful for the Court to proceed with litigation while the patent-in-suit and four related patents are undergoing reexamination. The statements made before the USPTO regarding the claims and prior art will undoubtedly have an impact on any litigation here, regardless whether it concerns the '321 Patent directly or one of the other patents that stems from the same application and uses similar language and claim terms. The outcome of the reexaminations and the positions taken by Front Row will be relevant to the claim construction, infringement, and validity decisions made by this Court.

Front Row also acknowledged the appropriateness of staying, or postponing, the litigation pending the outcome of the reexamination in its letter to MLBAM counsel when it dismissed the Original New Mexico Lawsuit against MLBAM. In that letter, Front Row's counsel indicated that

it would not pursue the claims further until the reexaminations were complete, at which time it would "make a decision based on (1) what claims survived; (2) how the surviving claims read; and (3) what products, if any, are covered by the surviving claims." (Littmann Decl. Ex. 2.)   Front Row's rationale in its letter is entirely inconsistent with the position it advances now – just a few months later. There is no reason for this Court, or any court, to waste judicial resources on patent claims that have largely been rejected thus far by the USPTO. To the extent any of the claims survive the reexamination process, Front Row will be free to pursue them at that time.

      Finally, Front Row again articulated the basis for a stay in its motion to dismiss without prejudice the claims against NBAMV. In its motion, Front Row argued to the Court that it did not believe the reexamination would be complete within the next year. Therefore, Front Row advocated dismissing the claims until after the reexamination is complete. According to Front Row, "dismissal will reduce both parties [sic] expenses and will better preserve judicial resources." (Original New Mexico Dkt. 103.) This is precisely the rationale for a stay in this case as well. The USPTO has granted a reexamination of the '321 Patent and the initial office action rejected all nineteen claims of the '321 Patent. There is no reason litigation should proceed until the parties understand what claims will survive, if any.

      Even apart from Front Row's admissions, all factors weigh in favor of a stay. Nearly all of Front Row's claims currently stand rejected by the USPTO and there is a strong likelihood that many, if not all, of the claims will be either rejected or modified significantly. Pursuing litigation now would be a waste when the issues could be greatly simplified. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the

reexamination proceeding).") Further, neither side stands to gain a tactical advantage from a stay. While the parties have filed numerous briefs and status reports in the Original New Mexico Lawsuit, discovery has not yet gotten underway. A stay now will simplify the issues and significantly reduce the burdens of litigation on the parties and the Court.

### C.  Defendants Should Be Awarded Fees Related To This Motion

The Texas court transferring this case granted Defendants' motion to transfer to New Mexico so that this case could be combined with Case No. 10-cv-00433. Despite the clear holding that administering two separate cases was a waste of judicial resources and risked inconsistent rulings, Front Row has chosen to oppose Defendants' motion to consolidate and require counsel to file a motion that costs their clients' money and wastes this Court's time.

In addition, although Front Row previously requested a stay, and has twice since (once just a few days ago) advocated dismissing litigation on the basis of pending reexaminations, it now refuses any attempt by Defendants to agree to a stay here. Front Row is arguing in one case that dismissal is necessary because of a pending reexamination, yet refuses to agree to a stay in this case even though it has almost precisely the same procedural posture. Again, Front Row's actions are intended only to waste Defendants' time and money and fail to take judicial resources seriously.

Front Row's bad faith gamesmanship and blatant judge shopping should not be countenanced and Front Row should be ordered to pay Defendants' fees for filing this motion.

### CONCLUSION

Defendants respectfully request that this Court consolidate this lawsuit with case number 1:10-cv-00433 and stay the proceedings pending the outcome of all Front Row reexaminations currently pending before the USPTO. Even if the Court determines consolidation is not appropriate, Defendants respectfully request that the Court stay all proceedings pending the

outcome of the Front Row patent reexaminations. Defendants' further seek reimbursement of fees relating to this motion.

Dated:   January 7, 2012	Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
    & SISK, P.A.

By:   */s/ Emil J. Kiehne*
        Emil J. Kiehne
P.O. Box 2168
Albuquerque, New Mexico 87103
Tel: (505) 848-1800
Fax: (505) 848-1889
E-mail: ejk@modrall.com


By:   */s/ Alan E. Littmann*
Alan E. Littmann
Illinois Bar No. 6283389
Brian O'Donoghue
Illinois Bar No. 6283857
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
564 W. Randolph St., Ste 400
Chicago, IL 60661
Tel: (312) 681-5000
Fax: (312) 881-5191
E-mail: alittmann@goldmanismail.com
E-mail: bodonoghue@goldmanismail.com

*Counsel for MLB Advanced Media LP*


By:   */s/ Eleanor M. Lackman*
Eleanor M. Lackman
COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP
41 Madison Avenue, 34th Floor
New York, New York 10010
Tel: (212) 974-7474

14

        Fax: (212) 974-8474
        ELackman@cdas.com

*Attorneys for defendants Premiere Radio Networks, Inc., Mercury Radio Arts, Inc. and GBTV, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, pursuant to Local Rule 5.1, on January 7, 2013, a true and correct copy of the foregoing document was electronically filed and provided to all counsel of record through the CM/ECF system and by e-mail.

By: _____*/s/ Emil J. Kiehne*_____